UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-71578-PMB |
| | ) | |
| C&L DELLA VALLE XXVI, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| -------------------------------------- | )-------------------------------------- | |
| | ) | |
| S. GREGORY HAYS, Chapter 7 Trustee | ) | |
| for the Estate of C&L Della Valle XXVI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| KEYSTONE REAL ESTATE | ) | |
| LENDING FUND, LP, | ) | |
| AMF HOLDINGS, LLC, | ) | |
| COBB COUNTY TAX COMMISSIONER, | ) | |
| WELLSLEY PARK HOMEOWNERS | ) | |
| ASSOCIATION, INC., CHANDA GOBER, | ) | |
| C&L DELLA VALLE XXVI, LLC, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**TRUSTEE'S (I) MOTION FOR AUTHORITY TO (A) SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL LIENS, INTERESTS, AND ENCUMBRANCES, AND (B) DISBURSE CERTAIN PROCEEDS AT CLOSING, AND (II) REQUEST FOR EXPEDITED HEARING**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of C&L Della Valle XXVI, LLC ("**Debtor**"), pursuant to 11 U.S.C. §§ 363(b), (f), and (m), and Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, by and through undersigned counsel, and files *Trustee's (I) Motion for Authority to (A) Sell Real Property of the Estate Free and Clear of Liens, Interests, and Encumbrances, and (B) Disburse Certain Proceeds at Closing, and (II) Request for Expedited Hearing* (the "**Sale Motion**"). In support of the Motion, Trustee

shows the Court as follows:

## Venue and Jurisdiction

1.      This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

## Background

### i. General Background

2.      On December 14, 2017 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**"), initiating Bankruptcy Case No. 17-71578-PMB (the "**Case**").

3.      On or about December 15, 2017, Trustee was appointed to the Case as the interim Chapter 7 trustee, under 11 U.S.C. § 701(a)(1).

4.      The original meeting of creditors was held and concluded on January 16, 2018, pursuant to 11 U.S.C. § 341(a), after which time, Trustee became the permanent Chapter 7 trustee, under 11 U.S.C. § 702(d).

5.      At the commencement of the Case, the bankruptcy estate was created under 11 U.S.C. § 541(a) (the "**Estate**"), and the Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Estate acquires after commencement of the Case.  11 U.S.C. § 541(a)(1) and (7) (2017).

6.      Trustee is the sole representative of the Estate.  11 U.S.C. § 323(a) (2017).

7.      Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 8] on January 19, 2018, and the Court entered an *Order* [Doc. No. 9] on January 22, 2018, appointing Arnall Golden Gregory LLP as attorneys for Trustee.

### ii. Scheduled Claims

8.      On January 31, 2018, Debtor filed amended bankruptcy schedules, scheduling general, unsecured, non-priority claims in the amount of $313,000.00.  [Doc. No. 15 at page 6 of 12].

### iii. The Property

9.      On *Schedule A/B: Assets – Real and Personal Property,* Debtor scheduled its sole ownership interest in that certain real property commonly known as 4570 Blackland Drive, Marietta, Cobb County, Georgia 30067 (the "**Property**").

### iv. Liens, Interests, and Encumbrances

10.      On *Schedule D: Creditors Who Have Claims Secured by Property,* Debtor scheduled one claim secured by the Property in the amount of $1,000,000.00 and in favor of AMF Holdings, LLC ("**AMF**").

11.      On January 23, 2018, AMF filed a *Motion for Relief from the Automatic Stay* [Doc. No. 10], in part, seeking relief from the automatic stay to foreclose its security interest in the Property (the "**Stay Relief Motion**").  In the Stay Relief Motion, AMF asserts a loan payoff in the amount of $1,161,617.84 as of December 1, 2017, with interest accruing *daily at the rate of $597.35*. (The total interest accrued for the month of January, 2018 was $18,517.85, increasing the payoff to $1,180,135.69 as of January 31, 2018.)

12.      Trustee obtained a full title examination for the Property, effective December 29, 2017 (the "**Title Report**").

13.      Superior in position to AMF, the Title Report reflects a *Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing* dated May 11, 2016 and recorded May 13, 2016 in favor of Woodbridge Mortgage Investment Fund 2, LLC (the

"**Woodbridge Deed**"). By virtue of an *Assignment of Deed to Secure Debt and Related Loan Documents* dated August 31, 2016 and recorded on September 12, 2016, the Woodbridge Deed was assigned to Keystone Real Estate Lending Fund, LP ("**Keystone**"). Upon information and belief, Debtor refinanced and paid off this loan through the loan from AMF, but it was never cancelled of record. Trustee will not pay Keystone anything from the proceeds resulting from the sale of the Property.

14. AMF's *Deed to Secure Debt, Assignment of Rents and Leases, Security Agreement and Fixture Filings* was recorded on November 4, 2016 (the "**AMF Deed**").

15. On January 26, 2017, after the recording of the AMF Deed, a *Writ of Fieri Facias* dated December 1, 2016 was recorded in favor of Chanda Gober ("**Gober**") in the amount of $3,112.50 (the "**Gober Lien**"). However, the Gober Lien is against Cammie McBrayer[1] who had no ownership interest in the Property at the time that the writ of fi fa was recorded.

16. Relatedly, the Title Report indicates that the Property is part of Wellsley Park Homeowners Association, Inc. ("**Wellsley Park**"). Debtor scheduled no debt owed to Wellsley Park. However, Wellsley Park filed a notice of lien on May 8, 2017 in the amount of $1,050.00.

17. The Title Report reflects no other liens or encumbrances on or against the Property other than outstanding *ad valorem* real property taxes for 2017 in the amount of $22,519.64.

18. Based on an inspection, evaluation, and comparative marketing analysis by a licensed real estate broker, there appears to be significant equity in the Property that could be realized for the benefit of the Estate.

19. Accordingly, on February 6, 2018, Trustee filed his *Application to Employ Real*

---

[1] Upon information and belief, "Cammie McBrayer" is the former name of Cammie Della Valle, who is the majority owner of Debtor.

*Estate Agent* [Doc. No. 19], and the Bankruptcy Court entered an *Order* [Doc. No. 20] that same

day, authorizing the employment of Coldwell Banker Residential Brokerage and Robin Blass

(collectively, the "**Realtor**") as the listing agent for the Property for a six percent (6%)

commission on the purchase price. Trustee advertised the Property for sale with a listing price of

$1,475,000.00 (the "**Listing Price**").

**Request for Authority to Sell Property of the Estate**
**Free and Clear of all Liens, Interests, and Encumbrances**
**Pursuant to 11 U.S.C. §§ 363(b) and (f)**

20.     After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for

the sale of the Property to Kimberly Keith and John Keith (the "**Purchasers**"), "as is, where is,"

for a sale price of $1,479,000.00 (the "**Purchase Price**"), subject to Bankruptcy Court approval

(the "**Contract**"). A true and correct copy of the Contract is attached hereto and incorporated

herein by reference as Exhibit "A."

21.     The Purchasers were procured through the efforts of Trustee and his Realtor. The

Purchasers are *bona fide* purchasers, and are not insiders of Debtor, Trustee, or the Realtor. The

Purchasers have submitted an earnest money deposit in the amount of $14,700.00. Trustee will

pay none of Purchasers' closing costs.

22.     Trustee has received a few offers on the Property, only two of which were at or

near the Listing Price. Trustee's proposed Contract with a Purchase Price of $1,479,000.00 is

the highest and best offer that Trustee has received, exceeding the Listing Price by $,4,000.00

and represents an appropriate selling price for the Property.

23.     The Contract is subject to a conventional loan contingency which gives the

Purchasers twenty-one (21) days to obtain financing and fifteen (15) days to have the Property

appraised.

24.    The closing is scheduled for March 13, 2018 (the "**Closing Date**"), subject to Bankruptcy Court approval.  Based on the high interest rate on the AMF loan, the payoff is increasing by over $18,000.00 per month.  By the end February, 2018, Trustee estimates that the AMF payoff will have increased to approximately $1,196,860.00, and, as of the Closing Date, the payoff will have increased to approximately $1,204,200.00.   Therefore, time is of the essence.

### Legal Analysis

### *i. Sale Free and Clear*

25.    Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1) (2016).  Section 105 of the Bankruptcy Code grants this Court the authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a) (2017).

26.    Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under 11 U.S.C. § 363(b) free and clear of any interest in such property if, among other things, the price at which the property is to be sold is greater than the aggregate of the liens on such property.  11 U.S.C. § 363(f) (2017).  Specifically, that code section provides:

(f)  The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2)    such entity consents;
(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4)    such interest is in bona fide dispute; or
(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

27.     As set forth below, Trustee can, under 11 U.S.C. § 363(f), sell the Property free and clear of all liens, claims, interests, and encumbrances with any lien (to the extent valid, perfected, enforceable, and unavoidable) attaching to the proceeds of the sale with the same priority and extent as they had in the Property.

28.     As set forth above, Trustee contends that (a) the lien of Keystone was paid in full, but never cancelled of record; and (b) the Gober Lien is not a lien against the Property. Therefore, neither Keystone nor Gober will be paid at closing.

29.     The payoff to AMF for its purported security interest in the Property will be approximately $1,204,200.00 at closing, and based on information currently available to him, Trustee estimates that the amount owed Wellsley Park is approximately $1,050.00.  Accordingly, with respect to the asserted security interest of AMF and Wellsley Park, the proposed Purchase Price is much greater than the payoff due to each, satisfying 11 U.S.C. § 363(f)(3).

30.     In sum, Trustee can sell the Property free and clear of all liens, claims, and interests.

### ii. Good Faith of Trustee and Purchasers

31.     Moreover, 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith. *See* 11 U.S.C. § 363(m) (2017).

32.     Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors or the trustee, or an attempt to take grossly unfair

advantage of other offerors.  *See In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

33.    Trustee and Purchasers have proceeded in good faith, and Purchasers are *bona fide,* good-faith purchasers and not insiders of Debtor.  Consequently, Trustee and Purchasers are entitled to the protections of 11 U.S.C. § 363(m).

### Request for Authority to Disburse Certain Proceeds at Closing

34.    Trustee requests authority to have all sale proceeds paid to him at closing and for authority to have paid at closing: (a) the payoff to AMF; (b) all outstanding *ad valorem* real property taxes in the amount of $22,519.64 (c) the Estate's pro-ration of the 2018 *ad valorem* county real property taxes estimated at $4,442.23 (based on 2017 tax bill); (d) real estate commission of six percent (6%) of the Purchase Price in the amount of $88,740.00; (e) the HOA lien of Wellsley Park in the approximate amount of $1,050.00; (f) any capital gains or other taxes related to the sale (none anticipated); (g) water and sewer liens (none anticipated); and (h) all other costs of sale, or costs necessary to close a sale of the Property.

35.    All other distributions will be made only upon further order of the Court.

36.    To the extent funds are disbursed at closing by a party other than Trustee, Trustee requests that such party be treated as Trustee's designated and authorized agent.

37.    Based on the above proposed distributions, Trustee estimates that the proposed sale will result in at approximately $150,000.00 coming into the Estate, all of which will be available to distribute in accordance with 11 U.S.C. § 726.   In other words, upon information and belief, the proposed sale will allow Trustee to make a meaningful distribution to holders of allowed unsecured claims.

**Other Relief Requested**

*a. Expedited Hearing*

38.     Trustee requests that the matter be set for hearing on an expedited basis.  So that Trustee may close the sale on the Closing Date (March 13, 2018) and get AMF paid in full as soon as possible for a greater benefit to the Estate and its creditors. Trustee requests that this matter be set for hearing as soon as practicable on or before March 12, 2018.  Because of the quickly growing AMF payoff (at approximately $18,000.00 per month), shortening the notice period is well within the Court's discretion.

*b. Waive the Stay Requirement of Rule 6004(h) Federal Rules of Bankruptcy Procedure*

39.     In addition, Trustee requests that the Court waive the stay of the order approving the proposed sale as authorized under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

40.     Finally, following notice to all creditors and parties in interest of the Sale Motion, the date of the Hearing, Trustee invites any and all competing cash bids, which exceed the present Contract by **at least $10,000.00,** supported by earnest money of **at least 2% of the bid price**, with no contingencies, and the ability to close within ten (10) days from Bankruptcy Court approval.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)     Scheduling a hearing on the Sale Motion on an expedited basis;

(b)     Granting the Sale Motion;

(c)     Authorizing and approving the Contract and the sale of the Property free and clear of all liens, interests and encumbrances;

(d)     Authorizing the distribution of certain proceeds at Closing;

11890383v1

(e)    Authorizing the proposed sale to be consummated immediately as allowed by

Federal Rules of Bankruptcy Procedure Rule 6004(h); and

(f)    Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 16th day of February, 2018.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*
    Michael J. Bargar
    Georgia Bar No. 645709
    michael.bargar@agg.com
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Tele: (404) 873-8500 / Fax: (404) 873-8501

**EXHIBIT "A" FOLLOWS**

11890383v1

## TRUSTEE'S PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into by and between **S. GREGORY HAYS, as and only as Trustee in Bankruptcy for Estate of C&L DELLA VALLE XXVI, LLC** (Chapter 7 Case No. 17-71578-PMB) (hereinafter referred to as "Seller") and **KIMBERLY KEITH and JOHN KEITH** (hereinafter, "Purchaser");

## W I T N E S S E T H :

1.   <u>Agreement to Sell and Purchase.</u>   For and in consideration of ONE DOLLAR ($1.00) in hand paid by Purchaser in favor of Seller, receipt of which is hereby acknowledged, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase and take from Seller, free and clear of all liens and encumbrances as approved by the Bankruptcy Court (hereinafter defined) and subject to and in accordance with all of the terms and conditions of this Agreement, all that tract or parcel of land lying and being in **Land Lot 6 of the 1st District, 2nd Section, Cobb County, Lot 7, Wellsley Subdivision, and commonly known as 4570 Blackland Drive, Marietta, Georgia 30067,** together with all rights, ways and easements appurtenant thereto, and all buildings, structures and other improvements located on the land and all lighting fixtures, mechanical, plumbing, air conditioning and other systems and fixtures as are attached or affixed thereto (hereinafter called the "Property").

2.   <u>Purchase Price; Method of Payment.</u>   The aggregate purchase price for the Property (hereinafter referred to as the "Purchase Price") shall be **ONE MILLION, FOUR HUNDRED SEVENTY-NINE THOUSAND AND NO/100 DOLLARS ($1,479,000.00).** Purchaser shall pay to Seller at Closing (as subsequently defined) the Purchase Price, after crediting the Earnest Money, and subject to the pro-rations and adjustments hereinafter described, as follows:

> Purchaser shall pay the Purchase Price to Seller at Closing in cash or cash equivalent.  Purchaser's obligation to close shall not be subject to any financial contingency unless set forth hereafter on **EXHIBIT "C."**

3.   <u>Earnest Money.</u>   Prior to or contemporaneously with Purchaser's execution of this Agreement, Purchaser has delivered to Seller a check drawn upon good funds in the amount of **FOURTEEN THOUSAND SEVEN HUNDRED AND NO/100 DOLLARS ($14,700.00)** (the "Earnest Money").  Seller shall, within five (5) business days following receipt, place the Earnest Money in an escrow account of Seller's choosing.  All parties to this Agreement acknowledge that Seller may deposit the Earnest Money in escrow/trust account and that Seller will be entitled to retain the interest earned on said Earnest Money deposit.  If the sale hereunder is consummated in accordance with the terms hereof, the Earnest Money shall be applied as part payment of the Purchase Price to be paid by Purchaser at the Closing.  In the event any earnest money check is not honored for any reason, by the bank upon which it is drawn, Seller shall promptly notify Purchaser.  Purchaser shall have 3 banking days after notice to deliver good funds to Seller.  In the event Purchaser does not timely deliver good funds to Seller, the Seller shall have

11885580v1

the right to terminate this Agreement upon written notice to the Purchaser. In the event of any default in the performance of the terms of this Agreement by Purchaser, the Seller may elect to accept the Earnest Money as liquidated damages in full settlement of any claim for damages and/or seek to enforce specific performance rights and obligations against the Purchaser under the terms of this Agreement. In the event Purchaser fails to pay any portion of the Purchase Price, Purchaser shall be considered to have breached the Agreement and Seller shall have the right to re-offer the Property for sale to others and to demand liquidated damages equal to the amount of the Earnest Money and/or demand specific performance. The parties acknowledge the difficulty of accurately estimating Seller's damages in the event of Purchaser's default and acknowledge that the amount of the Earnest Money is a reasonable pre-estimate of the probable loss to Seller resulting from Purchaser's default. In such event, the Earnest Money shall constitute liquidated damages and shall not be deemed a penalty. In the event this Agreement is terminated by Purchaser in accordance with any right of Purchaser to do so under the terms hereof, the Earnest Money shall be returned to Purchaser.

4.  Access and Inspection; Examination by Purchaser, Examination Period.

(a)  Purchaser acknowledges that Purchaser has had an opportunity to inspect the Property and accepts the Property in its present condition. Purchaser and Seller acknowledge that Seller has no obligation to correct any objections Purchaser may have or to make any repairs to the Property. The Property is sold "AS IS, WHERE IS" AND WITH ALL FAULTS, including but not limited to lead-    based paint hazards and damage from termite and other wood-destroying organisms. Purchaser agrees to indemnify and hold harmless Seller from and against any and all loss, costs, claims, injuries, and/or damages arising out of or relating to the acts of Purchaser or Purchaser's agents on the Property.

(b)  Notwithstanding anything herein to the contrary, Seller's responsibility in connection with the Property shall cease upon Purchaser's acceptance of the Property.

5.  Closing.  The closing of the purchase and sale of the Property, hereinafter called "Closing", shall take place on or before **March 13, 2018, or within ten (10) days following approval of the sale by the Bankruptcy Court** as provided in paragraph 31 hereof (herein called the "Closing Date"), at the offices of Seller or **Campbell & Brannon, LLC, 5565 Glenridge Connector, Suite 350, Atlanta, Georgia 30342; Telephone: 770.396.8535,** or at such other place as Seller and Purchaser may mutually agree upon. At the Closing, all gross proceeds (the "Proceeds") from the sale of the Property shall be paid directly to Seller for disbursement by the Seller to any claimants in accordance with the approval of the Bankruptcy Court (as hereinafter defined). Any valid lien or security interests in the Property shall be transferred from the Property to the Proceeds. All liens or security interests in the Property shall be null and void as to the Property upon appropriate Order of the Bankruptcy Court, and without the necessity of any separate cancellations or releases.

6.  Prorations and Adjustments to Purchase Price.  The following prorations and adjustments shall be made between Purchaser and Seller at Closing, or thereafter if Purchaser and Seller shall agree:

11885580v1

JK/KK

(a)     All city, state and county ad valorem taxes and similar impositions levied or imposed upon or assessed against the Property, hereinafter called the "Taxes", for the year in which Closing occurs shall be prorated as of the Closing Date.  In the event the Taxes for such year are not determinable at the time of Closing, such Taxes shall be prorated on the basis of the best available information and will not be prorated post-closing by Seller;

(b)     Any other items which are customarily prorated in connection with the purchase and sale of properties similar to the Property shall be prorated as of the Closing Date.

7.     [Intentionally omitted.]

8.     <u>Disposal Systems and Water Source.</u>  Purchaser shall determine the Disposal System and Water Source on the above-described Property.

9.     <u>Title Examination.</u>  Purchaser shall have a reasonable time after the date of this Agreement to examine title and to furnish Seller with a written statement of valid objections affecting the marketability of said title. Purchaser shall not be entitled to object to any of the following matters which affect title:  a) zoning ordinances affecting the Property, b) general utility, sewer and drainage easements of record, c) subdivision easements of record, d) any other leases, easements restrictions or encumbrances specified in this Agreement, and (e) liens and encumbrances that will be divested as a result of the approval of this sale by the Bankruptcy Court.  Seller shall have a reasonable time after receipt of such objections to satisfy all valid objections.  If Seller fails to satisfy such valid objections within a reasonable time, then, at the option of Purchaser evidenced by written notice to Seller, this Agreement shall be null and void. Marketable title as used herein shall mean title which an insurance company licensed to do business in the State of Georgia will insure at its regular rates, subject only to standard exceptions otherwise specified herein.  It is understood and agreed that the title herein required to be furnished by Seller shall be good and marketable, and marketability shall be determined in accordance with Georgia law as supplemented by the Title Standards of the State Bar of Georgia. It is agreed that any defect in the title which comes within the scope of any of said Title Standards shall not constitute a valid objection on the part of the Purchaser provided the Seller furnishes the affidavits or other title papers, if any, required in the applicable standard to cure such defect.  It is further agreed that failure of Seller to cure any title objections shall not be deemed to be a default under this Agreement.

10.     <u>Proceedings at Closing.</u>  On the Closing Date, the Closing shall take place as follows:

(a)     Seller shall deliver to Purchaser the following documents and instruments, duly executed by or on behalf of Seller: (i) a Trustee's Deed, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "A", conveying the Property by the legal description set forth in Paragraph 1 hereof; (ii) a Seller's Affidavit, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "B"; (iii) an affidavit of Seller's Residence in the form of and on the terms and

conditions required by the Revenue Department for the State of Georgia; (iv) and such other instruments as are normal and customary in a purchase and sale transaction of this type; and

    (b)   Purchaser shall pay the Purchase Price to Seller in accordance with the provisions of this Agreement.

11.   <u>Costs of Closing.</u>  Purchaser shall pay the State of Georgia real estate transfer tax payable on this transfer of the Property. Seller shall pay Seller's attorneys' fees. Except as otherwise expressly set forth on Exhibit "C" attached hereto and by this reference made a part hereof, Purchaser shall pay all loan closing costs, as well as all recording costs, the premium for any owner's policy of title insurance issued in favor of Purchaser insuring Purchaser's title to the Property, the cost of any survey of the Land obtained by Purchaser and Purchaser's and any lender attorneys' fees. All other costs and expenses of the transaction contemplated hereby shall be borne by the party incurring the same.

12.   <u>Disclaimer of Warranties.</u>  Except for the warranty of title to be included in the Trustee's Deed to be delivered to Purchaser by Seller, Seller does not, by the execution and delivery of this Agreement, and Seller shall not, by the execution and delivery of any document or instrument executed and delivered in connection with Closing, make any warranty, express or implied, of any kind or nature whatsoever, with respect to the Property, and all such warranties are hereby disclaimed. Without limiting the generality of the foregoing, SELLER MAKES, AND SHALL MAKE, NO EXPRESS OR IMPLIED WARRANTY OF SUITABILITY OR FITNESS OF ANY OF THE PROPERTY FOR ANY PURPOSE, OR AS TO THE MERCHANTABILITY, TITLE, VALUE, QUALITY, QUANTITY, CONDITION OR SALABILITY OF ANY OF THE PROPERTY. The sale of the Property by Seller to Purchaser hereunder shall be "AS IS" and "WHERE IS".

13.   <u>Possession.</u>  Seller shall surrender possession of the Property to Purchaser on the Closing Date, subject to the Permitted Exceptions.

14.   [Intentionally omitted.]

15.   <u>Remedies.</u> [Intentionally omitted.]

16.   <u>Damage or Destruction.</u>  Should the Property be destroyed or substantially damaged before time of Closing, Seller, immediately upon his knowledge of such damage or destruction, shall notify the Purchaser and Broker.

17.   <u>Condemnation.</u>  In the event of commencement of eminent domain proceedings or bona fide threat of such proceedings respecting any portion of the Property prior to Closing, Seller shall give Purchaser prompt written notice after Seller becomes aware thereof. If, prior to Closing, all or any material part of the Property is taken by eminent domain proceedings, Purchaser shall have the right, at Purchaser's option, to terminate this Agreement by giving written notice to Seller on or before the date ten (10) days after the date upon which Seller gives Purchaser written notice of such taking, in which event the Earnest Money shall be refunded to Purchaser promptly upon request, all rights and obligations of the parties under this Agreement shall expire, and this Agreement shall become null and void. In the event of a taking of less than

all or a material part of the Property, Purchaser shall have no right to terminate this Agreement by reason of such taking; however, Seller shall assign to Purchaser all rights of Seller in and to the awards or other proceeds payable thereafter by reason of such taking.

18.    <u>Association/Assessment Fees.</u>    Purchaser shall determine if any mandatory association/ assessment fees are payable.    Seller makes no representation about any such association and/or assessment fees.

19.    <u>Disclaimer.</u>

(a)    **Independent Expert Advice.** Purchaser acknowledges that Purchaser has not relied upon the advice or representations of Seller or of Seller's agents, attorneys, or employees, with reference to any matter, including but not limited to: legal and tax consequences of this Agreement in the sale of the Property; the terms and conditions of financing; the purchase and ownership of the Property; the structural condition of the Property; the operating condition of the electrical, heating, air conditioning, plumbing, water heating systems, pool, spa and appliances in the Property; the availability of utilities to the Property; the investment potential or resale value of the Property; the availability and ownership of amenity package, if applicable; restrictive covenants and architectural controls; or any other system or condition enumerated in the "Inspection of Property" paragraph above; planned or proposed zoning; proposed or planned changes to or widening of roadways; or any other condition or circumstance which may adversely affect the Property. Purchaser acknowledges that if such, or similar, matters have been of concern to Purchaser, Purchaser has sought and obtained independent advice relative thereto. Purchaser acknowledges that Closing shall constitute acceptance of the Property.

(b)    **Property Conditions.** Purchaser acknowledges that various substances used in the construction of the improvements on the Property or otherwise located on the Property may now or in the future be determined to be toxic, hazardous or undesirable and may need to be specially treated, handled and /or removed from the Property. Persons who have an interest in the Property may be required by law to undertake the cleanup of such substances. Purchaser acknowledges that: Seller has no expertise with respect to toxic wastes, hazardous substances or undesirable substances; such substances can be extremely costly to correct and remove. Seller has made no investigations or representations with respect to such substances; and Seller shall have no liability to Purchaser regarding the presence of said substances on the Property. Purchaser releases Seller and Seller's agents, attorneys, and employees from any claim, rights of action or suits relating to the presence of any hazardous substances, toxic wastes, or undesirable substances on the Property.

20.    <u>Assignment.</u>  This Agreement may not be assigned by Purchaser, in whole or in part, without the prior written consent of Seller. No assignment shall relieve Purchaser of liability for the performance of Purchaser's duties and obligations under this Agreement.

11885580v1

21.     Parties.  This Agreement shall be binding upon and enforceable against, and shall inure to the benefit of, Purchaser and Seller and their respective heirs, legal representatives, successors and assigns.  The parties acknowledge that Seller is a court-appointed Bankruptcy Trustee and has no independent knowledge of the Property and has never seen the Property.

22.     Broker and Commission.  All negotiations relative to this Agreement and the purchase and sale of the Property as contemplated by and provided for in this Agreement have been conducted by and between Seller and Purchaser without the intervention of any person or other party as agent or broker other than Listing Broker and Selling Broker. Purchaser and Seller each represents and warrants to the other that, with the exception of any commission or fees provided for in the United States Bankruptcy Code, Title 11, United States Code, to be paid from Seller's proceeds, there are and there will be no agent's, broker's, or other intermediary's fees or commissions payable as a consequence of this transaction, and that they have not dealt with a broker, agent, or intermediary, who might by reason of such dealing have any claim for a fee, commission or other compensation with respect to the purchase and sale of the Property except for a fee of six percent (6.0%) of the Purchase Price that shall be divided and paid to Listing Broker and Selling Broker. Notwithstanding any provision to the contrary contained herein, any obligation of Seller to pay any fee described in this paragraph 22 shall be subject to Bankruptcy Court Approval of this Agreement as described in paragraph 31 hereof.  Seller and Purchaser agree to indemnify, hold harmless, defend and protect the other from and against any and all claims for commissions, compensation, expense or charge of whatever nature, including but not limited to leasing commission, on the part of any broker, agent or other intermediary claiming by reason of any dealing with them except as set forth in this paragraph 22.

23.     Modification.  This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the purchase and sale of the Property and other matters contained herein, and this Agreement contains the sole and entire understanding between Seller and Purchaser with respect thereto.  This Agreement shall not be modified or amended except by an instrument in writing executed by or on behalf of Seller and Purchaser.

24.     Applicable Law.  This Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the United States of America and the State of Georgia. The parties agree that the Bankruptcy Court is a proper venue for any legal proceeding concerning this Agreement.

25.     Counterparts.  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

26.     Time.  Time is and shall be of the essence of this Agreement.

27.     Captions.  The captions and headings used in this Agreement are for convenience only and do not in any way restrict, modify or amplify the terms of this Agreement.

28.     Exhibits.  Each and every Exhibit referred to or otherwise mentioned in this Agreement is attached to this Agreement and is and shall be construed to be made a part of this Agreement by such reference or other mention at each point at which such reference or other

11865580v1

mention occurs, in the same manner and with the same effect as if each Exhibit were set forth in full and at length every time it is referred to or otherwise mentioned.

29.     <u>Notices.</u>  All notices, requests, demands, tenders, and other communications under this Agreement shall be in writing.  Any such notice, request, demand, tender or other communication shall be deemed to have been duly given when actually delivered, or one (1) day after being delivered to a nationally recognized commercial courier for next day delivery, or when deposited in the United States Mail, Certified Mail, Return Receipt Requested, with all postage prepaid, to the address for each party set forth below its execution of this Agreement.  Rejection or other refusal to accept, or inability to deliver because of changed address of which no notice was given, shall be deemed to be receipt of such notice, request, demand, tender, or other communication.  Any party, by written notice to the others in the manner herein provided, may designate an address different from that stated above.

30.     <u>Survival.</u>  The provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement, shall survive the consummation of the purchase and sale of the Property on the Closing Date, the delivery of the deed and the payment of the Purchase Price.  Notwithstanding anything to the contrary set forth in this Agreement, the provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement shall also survive any termination of this Agreement in accordance with its terms.

31.     <u>Bankruptcy Court Approval.</u>  Notwithstanding any other provision in this Agreement to the contrary, this Agreement shall be subject to and contingent upon the approval of the Bankruptcy Court (herein the "Bankruptcy Court") in that certain case pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 17-71578-PMB** (the "Bankruptcy Case") authorizing the sale of the Property free and clear of all liens and encumbrances in accordance with the terms of this Agreement and with same to the extent valid, enforceable and unavoidable attaching to the net sale proceeds.  In the event the Bankruptcy Court fails to approve this Agreement on or prior to the date which is forty-five (45) days from the date of this Agreement, Seller may by notice to Purchaser terminate this Agreement, whereupon the Earnest Money shall be promptly refunded to Purchaser except as provided hereinabove with respect to a Purchaser's default, and this Agreement shall become null and void and the parties shall be relieved of and released from any and all further rights, duties, obligations and liabilities hereunder.  Seller reserves the right to contest and compromise any real estate ad valorem tax liability for the Property.  Purchaser agrees to cooperate with Seller regarding same so long as Seller bears all costs and expenses in connection therewith.

32.     <u>Home Warranty.</u>  Purchaser may obtain a home warranty at Purchaser's expense.

33.     <u>Locks Changed.</u>  Purchaser shall change the locks to the Property at Purchaser's expense.

34.     <u>Counterparts.</u>  This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties.  Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

11885580v1

35. <u>Special Stipulations.</u> The special stipulations, if any, attached hereto as **EXHIBIT "C"** if conflicting with any preceding paragraphs shall control; the preceding paragraphs shall not control.

36. <u>Conventional Loan Contingency.</u> The conventional loan contingency is attached hereto as **EXHIBIT "D,"** and the terms of which are incorporated herein by reference.

This Agreement shall be open for acceptance **until 11:59 p.m. on the February 8, 2018**, which acceptance date shall constitute the effective date of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, as of the day and year first written above.

Accepted by Seller this 8th day of February, 2018

SELLER:

_____ [SEAL]
S. GREGORY HAYS, AS AND ONLY AS
TRUSTEE IN BANKRUPTCY FOR THE
ESTATE OF C&L DELLA VALLE XXVI, LLC

Initial address for notices:

c/o Arnall Golden Gregory LLP
171 17th Street, N.W.
Suite 2100
Atlanta, Georgia 30363

LISTING BROKER:
COLDWELL BANKER
RESIDENTAL BROKERAGE
License No. H-59730

By: _____ [SEAL]
Printed Name:   Robin Blass
                License No 338427
Title:          Realtor

11085580v1

Accepted by Purchaser this 8th day of February, 2018.

PURCHASER:

_____ [SEAL]
KIMBERLY KEITH

_____ [SEAL]
JOHN KEITH

SELLING BROKER:
ENGEL & VOLKERS NORTH ATLANTA
License No. H-75894

By: _____ [SEAL]

Printed Name:   Camilo "Boh" Bohorquez
                License No. 331708
Title:          Realtor

11885580v1

## PURCHASE AND SALE AGREEMENT

### Index to Exhibits

Exhibit "A"   -   Form of Trustee's Deed of Real Estate

Exhibit "B"   -   Form of Seller's Affidavit

Exhibit "C"   -   Special Stipulations (If Any)



## EXHIBIT "A"

### Form of Trustee's Deed of Real Estate

11885580v1

Return to:
Michael Campbell, Esq.
Campbell & Brannon, LLC
Glenridge Highlands Two
5565 Glenridge Connector
Suite 350
Atlanta, Georgia 30342

STATE OF GEORGIA

COUNTY OF FULTON

## TRUSTEE'S DEED OF REAL ESTATE

THIS INDENTURE, made this **13th** day of **March, 2018** between **S. GREGORY HAYS, as and only as Trustee in Bankruptcy for the Estate of C&L DELLA VALLE XXVI, LLC,** the Debtor, in a case now pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 17-71578-PMB**, filed on **December 14, 2017** (hereinafter called "Grantor"), and **KIMBERLY KEITH** and **JOHN KEITH** (hereinafter called "Grantee").

Grantor, as owner of record and pursuant to his power as Trustee, as set forth in the copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines attached as **EXHIBIT "A"** and by virtue of the power and authority given in and by that Order (the "Sale Order") entered upon the Trustee's Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363(b) and (f), which Sale Order was entered by the United States Bankruptcy Court for the Northern District of Georgia on **March _____, 2018**, a copy of which is attached as **EXHIBIT B"**, and in consideration of TEN DOLLARS ($10.00), lawful money of the United States paid by the Grantee, receipt whereof is hereby acknowledged, and other good and valuable consideration, does hereby grant, bargain, sell, convey and release unto the Grantee, its heirs and assigns forever:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 6 OF THE 1ST DISTRICT, 2ND SECTION, COBB COUNTY, GEORGIA, BEING LOT 7, WELLSLEY SUBDIVISION, AS PER PLAT OF SURVEY RECORDED IN PLAT BOOK 176, PAGE 71, AND REVISED IN PLAT BOOK 192, PAGE 23, COBB COUNTY, GEORGIA RECORDS, WHICH PLATS ARE INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

SAID PROPERTY IS KNOWN GENERALLY AS 4570 BLACKLAND DRIVE, MARIETTA, COBB COUNTY, GEORGIA 30067.

with the appurtenances and all of the estate which the said **C&L DELLA VALLE XXVI, LLC,** the Debtor, had in said premises at the time of the filing of his Voluntary Petition for Relief in the United States Bankruptcy Court for the Northern District of Georgia, and also the estate therein which the Grantor had or has power to convey or dispose of as Trustee in Bankruptcy for said Debtor, **C&L DELLA VALLE XXVI, LLC,** pursuant to the Sale Order (collectively the "Property").

11885580v1

TO HAVE AND TO HOLD the Property herein granted unto the Grantee, its heirs and assigns forever.

IN WITNESS WHEREOF, Grantor has hereunto set his hand and seal the day and year first above written.

Signed, sealed and delivered on
the 13th day of March, 2018,
in the presence of:

GRANTOR:

_____
Unofficial Witness

_____ [SEAL]
**S. GREGORY HAYS,** as and only as
Trustee in Bankruptcy for the Estate of
**C&L DELLA VALLE XXVI, LLC,** pursuant to
the Bankruptcy Court Order Authorizing the Sale
of the Property

_____
Notary Public
My Commission Expires: _____

[NOTARY SEAL]

JK|KK

## TRUSTEE'S DEED OF REAL ESTATE

### Index to Exhibits

Exhibit "A"   -   Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

Exhibit "B"   -   Sale Order

11885580v1

**EXHIBIT "A" of TRUSTEE'S DEED OF REAL ESTATE**

**Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines**

| Information to identify the case: | | |
|---|---|---|
| Debtor | **C&L Della Valle XXVI, LLC**<br>Name | EIN **81-1039871** |
| United States Bankruptcy Court  **Northern District of Georgia**<br>Court website: www.ganb.uscourts.gov | | Date case filed for chapter  **7   12/14/17** |
| Case number:   **17-71578-pmb** | | |

## Official Form 309C (For Corporations or Partnerships)

## Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline     12/15

For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.

This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines.

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.
To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).  Copy fees or access charges may apply. A free automated response system is available at 866–222–8029 (Georgia Northern). You must have case number, debtor name, or SSN when calling.

The staff of the bankruptcy clerk's office cannot give legal advice.

Do not file this notice with any proof of claim or other filing in the case.

| 1. | Debtor's full name | C&L Della Valle XXVI, LLC | |
|---|---|---|---|
| 2. | All other names used in the last 8 years | | |
| 3. | Address | 4570 Blackland Drive<br>Marietta, GA 30067 | |
| 4. | Debtor's attorney<br>Name and address | Howard P. Slomka<br>Slipakoff & Slomka, PC<br>Overlook III – Suite 1700<br>2859 Paces Ferry Rd, SE<br>Atlanta, GA 30339 | Contact phone (404) 800–4001<br><br>Email:  NO EMAIL ADDRESS FOUND |
| 5. | Bankruptcy trustee<br>Name and address | S. Gregory Hays<br>Hays Financial Consulting, LLC<br>Suite 555<br>2964 Peachtree Road<br>Atlanta, GA 30305 | Contact phone (404) 926–0060 |
| 6. | Bankruptcy clerk's office<br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | M. Regina Thomas<br>Clerk of Court<br><br>1340 United States Courthouse<br>75 Ted Turner Drive SW<br>Atlanta, GA 30303 | Office Hours: 8:00 a.m. – 4:00 p.m.<br><br>Court website: www.ganb.uscourts.gov<br><br>Contact phone 404–215–1000 |
| 7. | Meeting of creditors<br>The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. Cellular phones and other devices with cameras are not allowed in the building. | January 16, 2018 at 10:00 AM<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location:<br><br>Third Floor – Room 366, Russell Federal Building, 75 Ted Turner Drive SW, Atlanta, GA 30303 |
| 8. | Proof of claim<br>Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now.<br><br>If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| 9. | | | |

Case 17-71578-pmb    Doc 2    Filed 12/15/17    Entered 12/15/17 07:31:34    Desc Ch 7
First Mtg Corp No POC    Page 2 of 2

| **Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |
|---|---|

Official Form 309C (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case — No Proof of Claim Deadline**                    page 1

## EXHIBIT "B" of TRUSTEE'S DEED OF REAL ESTATE

### Sale Order

11885580v1

## EXHIBIT "B"

### Seller's Affidavit

11885580v1

JK|KK

STATE OF GEORGIA
COUNTY OF FULTON

## SELLER'S AFFIDAVIT

The undersigned, being duly sworn, states:

That the undersigned is the duly authorized and appointed Trustee in Bankruptcy for the Estate of **C&L Della Valle XXVI, LLC**, United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, **Case No. 17-71578-PMB**, subject to a bankruptcy court order authorizing the sale of the Property described hereafter ("Seller") and is duly authorized to execute this affidavit;

That Seller, in his capacity as the Bankruptcy Trustee, is the owner of the real property described in **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property");

That Seller has never seen the Property and makes no warranties or representations in regard thereto. Seller has no knowledge of any disputes concerning the location of the lines and corners of the Property;

That Seller has no knowledge of any improvements or repairs which have been made by or at the instance of Seller on the Property during the three (3) months immediately preceding the date of this affidavit and has never seen the Property;

That, except for the matters set forth on **Exhibit "B"** attached hereto and incorporated herein by reference, to the best of the knowledge of the undersigned, in his capacity as the Bankruptcy Trustee, there are no outstanding indebtedness for or liens against any equipment or fixtures attached to, installed on, the Property or any improvements thereon;

That to the best of the knowledge of Seller, there are no persons or other parties in possession of the Property who have a right or claim to possession extending beyond the date hereof;

That, to the best of the knowledge of Seller, there are no pending suits, proceedings, judgments, other bankruptcies, liens or executions against Seller, in his capacity as the Bankruptcy Trustee, which affect title to the Property, the improvements thereon or the fixtures attached thereto; and

That Seller is making this affidavit with the knowledge that it will be relied upon by **KIMBERLY KEITH and JOHN KEITH** in purchasing the Property from Seller and by purchaser's lender in making a loan on the Property and by a title insurance company insuring the status of title to the Property.

Sworn to and subscribed before me
this 13th day of March, 2018.

_____
Notary Public
My Commission expires:_____

[NOTARY SEAL]

_____[SEAL]
**S. GREGORY HAYS**, as and only as Trustee in Bankruptcy of the Estate of **C&L Della Valle XXVI, LLC**, pursuant to Bankruptcy Court Order Authorizing the Sale of the Property

JK/KK

11885580v1

## SELLER'S AFFIDAVIT

### Index to Exhibits

Exhibit "A"    -    Legal Description of the Property

Exhibit "B"    -    Permitted Exceptions

JK|KK

11885580v1

## EXHIBIT "A"

### Legal Description of the Property

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 6 OF THE 1ST DISTRICT, 2ND SECTION, COBB COUNTY, GEORGIA, BEING LOT 7, WELLSLEY SUBDIVISION, AS PER PLAT OF SURVEY RECORDED IN PLAT BOOK 176, PAGE 71, AND REVISED IN PLAT BOOK 192, PAGE 23, COBB COUNTY, GEORGIA RECORDS, WHICH PLATS ARE INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

SAID PROPERTY IS KNOWN GENERALLY AS 4570 BLACKLAND DRIVE, MARIETTA, COBB COUNTY, GEORGIA 30067.

JK/KK

11885580v1

## EXHIBIT "B"

### Permitted Exceptions

1.  *Ad valorem* real property taxes and assessments outstanding, and the Estate's pro-rated share of 2018.

2.  All other matters disclosed by the public records.

3.  Zoning ordinances affecting the property.

JK/KK

## EXHIBIT "C"

### Special Stipulations

1.  Purchaser understands the Property is being sold "as is, where is" and waives the right to request repairs.

2.  Purchaser understands there is no disclosure statement included as part of this Agreement.

3.  Purchaser has tendered the earnest money to Coldwell Banker Residential Brokerage in the amount of FOURTEEN THOUSAND SEVEN HUNDRED AND NO/100 DOLLARS ($14,700.00).

4.  Seller will pay NONE of Purchaser's closing costs.

5.  This Agreement is subject to a Conventional Loan Contingency which is attached hereto as Exhibit "D."

6.  Subject to approval of the sale by the Bankruptcy Court, the closing on the sale will take place on or before March 13, 2018, or within ten (10) days following the Bankruptcy Court approval.

Docusign Envelope ID: [illegible]

## CONVENTIONAL LOAN CONTINGENCY
### EXHIBIT " D "

Georgia REALTORS

2018 Printing

This Exhibit is part of the Agreement with an Offer Date of 9 February, 2018 _____ for the purchase and sale of that certain Property known as 4570 Blackford Drive _____ Marietta _____ Georgia 30087

1. **Application.** Buyer shall promptly apply for and in good faith seek to obtain the conventional loan or loans described below ("Loan(s)") such that Buyer can fulfill Buyer's obligations hereunder prior to the expiration of this Conventional Loan Contingency.

*[Select A. or A. and B. below. Any box not selected shall not be a part of this Agreement. All Loan terms must be filled in.]*

| ☑ A. | FIRST MORTGAGE LOAN | Loan Amount | Term | Interest Rate (at par) | Rate Type | Source Of Loan Term |
|---|---|---|---|---|---|---|
| | | 75 % of purchase price | 30 years | ____ % per annum (for initial rate on adjustable loan) | ☑ Fixed<br>☐ Adjustable<br>☐ Interest Only | ☐ Institutional<br>☐ Seller<br>☐ Other |
| ☐ B. | SECOND MORTGAGE LOAN | ____ % of purchase price | ____ years | ____ % per annum (for initial rate on adjustable loan) | ☐ Fixed<br>☐ Adjustable<br>☐ Interest Only | ☐ Institutional<br>☐ Seller<br>☐ Other |

2. **Use of Particular Mortgage Lender.** Unless an Approved Mortgage Lender is identified below, Buyer may apply for approval of the Loan(s) with any institutional mortgage lender licensed to do business in Georgia. If an Approved Mortgage Lender(s) is identified below, Buyer shall apply for approval of the Loan(s) with at least one such Approved Mortgage Lender. Nothing herein shall require Buyer to obtain mortgage financing from an Approved Mortgage Lender.

**Approved Mortgage Lender(s):**
[illegible] Senior Mortgage Banker

(hereinafter singularly "Approved Mortgage Lender" and collectively "Approved Mortgage Lender(s)")

3. **Same/New Apply for Different Loan(s).** A Loan Denial Letter (as that term is defined below) must be for the Loan(s) described above. Buyer may also apply for different loans from the Loan(s) described above. However, the denial of such other loans shall not be a basis for Buyer to terminate this Agreement.

4. **Buyer to Notify Seller of Intent to Proceed.** When it is known, Buyer shall promptly notify seller of any mortgage lender to whom Buyer has sent a notice of intent to proceed with loan application and the name and contact information for the loan origination.

5. **Financing Contingency.** Buyer shall have 21 ____ days from the Binding Agreement Date ["Financing Contingency Period"] to determine if Buyer has the ability to obtain the Loan(s) described above ["Financing Contingency"]. Buyer shall be deemed to have the ability to obtain the Loan(s) unless prior to the end of the Financing Contingency Period, Buyer: a) notifies Seller that Buyer is terminating the Agreement because Buyer has been turned down for the Loan(s) and b) provides Seller within seven (7) days from the date of such notice a letter of loan denial from a mortgage lender based upon the mortgage lender's customary and standard underwriting criteria ["Loan Denial Letter"]. The Loan Denial Letter and mortgage lender issuing the Loan Denial Letter must meet all of the requirements set forth elsewhere in this Exhibit. Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may be provided to Seller after the Financing Contingency Period has ended if the above-referenced seven (7) day period to provide the Loan Denial Letter falls outside of the Financing Contingency Period.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _____ BORIS RODRIGUEZ _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2017 by Georgia Association of REALTORS®, Inc.      F51, Conventional Loan Contingency Exhibit, Page 1 of 2, 01/01/18

Electronically Signed using eSignOnline™ | Session ID: [illegible]

JK KK

DocuSign Envelope ID: B5D89XDF-3A66-40C1-807B-AFDCCCCECCE1

JK/KK

Electronically Signed using eSignOnline™| Session ID: f866a576-d7c4-4f01-16cb-bea4d008103]

DocuSign Envelope ID: 83D5B4DF-2A96-4DC1-8C7B-AFDCC00EBCE1

2/8/2018

Kimberly Keith
Print or Type Name

2/8/2018

John Keith
Print or Type Name

Additional Signature Page (F140) ☐ is ☐ is not attached.

Engel & Völkers North Atlanta
Listing Brokerage Firm

Camilo Behequny      2/8/2018
Broker or Affiliated Licensee Signature

Camilo 'Bob' Behorquez
Print or Type Name

Atlanta REALTORS® Association
REALTORS® Membership

S. Gregory Hayes, Trustee  2/8/2018
1 Seller's Signature

S. Gregory hayes, as and only as
Trustee of the Estate of C. & L. Della

2 Seller's Signature

Print or Type Name

Additional Signature Page (F140) ☐ is ☐ is not attached.

Coldwell Banker
Listing Brokerage Firm

Robin Blass / Lauren Blass
Broker or Affiliated Licensee Signature

Robin Blass
Print or Type Name

REALTORS® Membership

Copyright 2015 by Georgia Association of REALTORS®, Inc.     F94, Conventional Loan Contingency Exhibit, Page 3 of 3, 01/01/15

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



Electronically Signed using eSignOnline™ | Session ID . ff52a978-87e4-4ff1-05ab-bea94f0D43P |

## CERTIFICATE SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's (I) Motion for Authority to (A) Sell Real Property of the Estate Free and Clear of All Liens, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing, and (II) Request for Expedited Hearing* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail or certified mail, as indicated, to the following persons at the addresses stated:

***All parties by First Class Mail:***

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

S. Gregory Hays
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

AMF Holdings, LLC
c/o Brian P. Hall
Smith, Gambrell & Russell, LLP
Promenade, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, GA 30309

Wellsley Park Homeowners Assn., Inc.
1265 Stella Circle
Mableton, GA 30126

Wellsley Park Homeowners Assn., Inc.
c/o Alec B. Rickenbaker, Registered Agent
7380 McGinnis Ferry Road. #300
Suwanee, GA 30024

Angela Weiland
Wellsley Park Homeowner's Assn., Inc.
4571 Blackland Drive
Marietta, GA 30067

Carla Jackson
Cobb County Tax Commissioner
4700 Austell Road
Austell, GA 30106

Keystone Real Estate Lending Fund, LP
C/o The Corporation Trust Company,
Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Howard P. Slomka
Slipakoff & Slomka, P.C.
Overlook III – Suite 1700
2859 Paces Ferry Road, SE
Atlanta, GA 30339

C&L Della Valle XXVI, LLC
4570 Blackland Drive
Marietta, GA 30067

Michael Campbell
**ATTENTION: Denise Hammock**
Campbell & Brannon, LLC
5565 Glenridge Connector
Suite 350
Atlanta, GA 30342

Chanda Gober
563 Warrenton Drive
Douglasville, GA 30134

This 16th day of February, 2018.

/s/ Michael J. Bargar
Michael J. Bargar
Georgia Bar No. 645709